IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | |
|---|---|
| THE CITY LIGHTING PRODUCTS GROUP, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 11SL-CC04037 ) Div. 8 |
| RUBINBROWN, LLP, | ) ) ) |
| Defendant. | ) |

**PLAINTIFF'S ANSWERS TO DEFENDANT'S SECOND SET OF
INTERROGATORIES DIRECTED TO PLAINTIFF**

Plaintiff The City Lighting Products Group ("Plaintiff"), pursuant to Rule 57.01 of the Missouri Rules of Civil Procedure, hereby answers Defendant's First Set of Interrogatories Directed to Plaintiff The City Lighting Products Group in the manner and within the time frame provided for by said Rules.

**DEFINITIONS AND INSTRUCTIONS**

1. The term "**Petition**" means Plaintiff's First Amended Petition filed in the Circuit Court of St. Louis County.

2. The term "**Plaintiff**" means Plaintiff The City Lighting Products Group, any predecessor of Plaintiff and any person acting as an employee, agent or other representative for Plaintiff.

3. The term "**CLP**" means CLP Corporation, KCLP Corporation, City Lighting Products Co., TAM, LLC, MAT Partnership, CLP of Denver, Metropolitan Lighting, LLC, CLPD, LLC, or Hohl Partnership, any predecessor of CLP and any person acting as an employee, agent or other representative for CLP.

4. The terms "**You**" or "**Your**" means Plaintiff or CLP.

**EXHIBIT A**

5. The term **"RubinBrown"** means RubinBrown LLP.

6. The term **"person"** shall be broadly construed to mean any individual, corporation, partnership, Limited Liability Company, association, joint venture, sole proprietorship, agency, firm, board, authority, commission, or other legal or business entity.

7. The term **"document"** is used in its broadest sense and shall mean all "writings" including but not limited to the original (or a copy when the original is not available) and each non-identical copy (including those that are non-identical by reason of notations or markings) of any and all other written, printed, typed, punched, taped, filmed or graphic matter or recorded or tangible thing, of whatever description, however produced or reproduced (including computer-stored or generated data, together with instructions or programs necessary to search and retrieve such data), and shall include all attachments to and enclosures with any requested item to which they are attached or with which they are enclosed, and each draft thereof. The term "document" shall specifically include all recorded electronic communications such as electronic mail (E-mail) as well as any kind of written, printed, typed, recorded, electronically stored, or graphic matter, however produced or reproduced, whether sent or received or neither, including originals, copies and drafts and both sides thereof, pertaining in any way to the subject matter of this action, and including but not limited to: papers, books, periodicals, pamphlets, newspaper articles or clippings, publications, sheets, book entries, accounts, letters, photographs, objects, tangible things, correspondence, e-mail messages, telegrams, cables, telex messages, memoranda, notes, data, notations, work papers, communications, inter-office communications, inter-departmental communications, transcripts, minutes, memoranda, reports, and recordings or telephone or other conversations or of interviews, or of conferences, or of committee meetings or of other meetings, affidavits, statements, summaries, opinions, reports, records, forms, studies,

analyses, formulae, plans, specifications, evaluations, contracts, deeds, licenses, agreements, offers, orders, invoices, checks or check forms, drafts, vouchers, ledgers, journals, books or records of account, summaries of accounts, bills, balance sheets, income statements, questionnaires, answers to questionnaires, statistical records, desk calendars, appointment books, diaries, expense reports, schedules, catalogs, lists, indexes, tabulations, calculations, charts, graphs, maps, surveys, drawings, renderings, diagrams, photographs, recordings, films, computer programs, computer files, computer data, computer tapes, magnetic tapes and cards, punch cards, computer printouts, data processing input and output, microfilms, all other records or information kept by electronic, photographic, mechanical or other means, and things similar to any of the foregoing however denominated, whether currently in existence or already destroyed.

8. The term **"thing"** refers to any tangible object, other than a document, and includes objects of every kind and nature including, but not limited to, prototypes, models, and specimens.

9. The terms **"refer"** **"relate"** or **"relating"** or **"pertain"** mean, in addition to their customary and usual meaning, discuss or discussing, refer or referring, reflect or reflecting, assess or assessing, record or recording and comment or commenting.

10. The terms **"communication,"** **"communicated"** or **"communications"** mean any transmission of letters, numbers, images, symbols, data or other information by any means, including, but not limited to, any oral, written, or electronic means.

11. The words **"or,"** **"and,"** **"all,"** **"every,"** **"any,"** **"each,"** **"one-or-more,"** **"including,"** and similar words of guidance, are intended merely as such, and should not be construed as words of limitation. The words "or" and "and" shall include each other whenever

3

possible to expand, not restrict, the scope of the interrogatory. The word "including" shall not be used to limit any general category or description that precedes it.

12. The word **"concerning"** means relating to, referring to, describing, evidencing or constituting.

13. For purposes of these interrogatories, terms not specifically defined shall have their ordinary meaning.

14. The singular form or masculine gender, when used herein, shall include respectively, the plural and feminine or neuter as appropriate.

15. If you claim that an interrogatory is overly broad, you shall divulge information responsive to that portion of the interrogatory that is unobjectionable and shall specifically identify the respect in which the interrogatory is allegedly overly broad.

16. If you claim that an interrogatory is unduly burdensome, you shall produce information responsive to that portion of the interrogatory that is unobjectionable and shall specifically identify the respect in which the interrogatory is allegedly unduly burdensome.

17. If an interrogatory encompasses information not in your possession, but that you know or have reason to believe exists, you shall identify such documents or things to the extent possible, indicating the circumstances of your knowledge or belief regarding the information and identifying the persons who are believed to have knowledge of the information.

## INTERROGATORIES

### Answer Common to All Interrogatories

Answers set forth herein are based on discovery conducted and documents reviewed to date. Additional discovery and/or document review may cause Plaintiff to supplement or amend the answers set forth herein.

1.  With respect to your allegation in Paragraph 5 of the Amended Petition that "the Consolidated Financial Statements of Plaintiff for the years 1999 through 2006 contained errors, irregularities, evidence of employee dishonesty, evidence of employee fraud and evidence of employee embezzlement (herein referred to as "Irregularities")," please provide the following information:

    A.  State in detail (by document date, page and line item) all such errors, irregularities, evidence of employee dishonesty, evidence of employee fraud and evidence of employee embezzlement;

    B.  Identify any person who has or claims to have knowledge regarding all such errors, irregularities, evidence of employee dishonesty, evidence of employee fraud and evidence of employee embezzlement;

    C.  Identify all documents that relate to any such errors, irregularities, evidence of employee dishonesty, evidence of employee fraud and evidence of employee embezzlement;

    D.  State the date when you learned of each such error, irregularity, evidence of employee dishonesty, evidence of employee fraud and evidence of employee embezzlement;

    E.  Identify each employee who engaged in any dishonest act and describe each such dishonest action undertaken by each such employee;

    F.  Identify each employee who engaged in fraud and describe each such fraudulent action undertaken by each such employee;

    G.  Identify each employee who embezzled money and describe each such embezzlement undertaken by each such employee;

  H. State in detail the nature and amount of any damage sustained by you as a result of any such employee dishonesty;

  I. State in detail the nature and amount of any damage sustained by you as a result of any such employee fraud;

  J. State in detail the nature and amount of any damage sustained by you as a result of any such employee embezzlement;

  **ANSWER:**

1A. Discovery is incomplete. A review of the workpapers and the Plaintiff's books of original entry discloses duplicative and recurring journal entries and adjusting journal entries, spanning multiple fiscal years, that overstated the income, understated the costs of goods sold and, thereby, overstating the net income of the company/taxpayer (Plaintiff). Such overstatement, appearing in the Plaintiff's reviewed financial statements and income tax returns, was used by Steven Vierling (hereinafter, "Vierling") as leverage to gain inflated compensatory adjustments including, but not limited to, base salary increases, bonuses and retirement plan contributions that were, in part, dependent upon the Plaintiff's financial performance. Such overstatement also caused the Plaintiff to overpay its income taxes, requiring the preparation of amended tax returns at considerable additional cost to the Plaintiff, caused Plaintiff to issue inappropriate bonuses and excessive pension contributions.

1B. Those individuals include, but are not limited to, Lester Hohl, Michael Hohl, Marilyn Gilliam, Steve Laury, John McCartney (father) and John McCartney (son) of Plaintiff, unidentified Revenue Agents Special Agents of the U.S. Treasury, unidentified

6

Special Agents of the Federal Bureau of Investigation, Assistant United States Attorney Michael Reap, Donna Smith and Don Mitchel of Brown Smith Wallace, Jim Donovan of Sabino & Company, and Rich Michalek.

1C.     Discovery is incomplete. The journal and adjusting journal entries, referenced in the response to 1A, above, appear in the printed monthly reports Vierling generated that constitute the Plaintiff's books of original entry. The results of these entries appear in the Plaintiff's financial statements and income tax returns as both overstated and understated general ledger balances that produced an overstated net income in multiple fiscal years.

1D.     In October 2007, agents of the Internal Revenue Service and Federal Bureau of Investigation entered the Plaintiff's premises with a warrant with the intention to interview employees and seize evidence that was apparently prepared by Vierling for such an event. The full scope of Vierling's fraudulent activities were not discovered until sometime in 2010.

1E.     The sole employee who perpetrated the fraud was Vierling. He subsequently pled guilty to embezzlement, made partial restitution and entered into a settlement with respect to civil allegations of the Plaintiff. Plaintiff is not seeking damages against Defendant for restitution of money stolen by Vierling. Timothy Hohl pled guilty to an unrelated crime of mail fraud.

1F.     The sole employee who perpetrated the fraud was Vierling. He subsequently pled guilty to embezzlement, made partial restitution and entered into a settlement with respect to civil allegations of the Plaintiff. Timothy Hohl pled guilty to an unrelated crime of mail fraud.

1G.    The sole employee who perpetrated the fraud was Vierling. He subsequently pled guilty to embezzlement, made partial restitution and entered into a settlement with respect to civil allegations of the Plaintiff.

1H.    Discovery is incomplete. See answer to Plaintiff's answer to Defendant's First Interrogatory No 25.

1I.    Discovery is incomplete. See answer to 1H.

1J.    Discovery is incomplete. See answer to 1I.

2.    With respect to your allegations in Paragraph 9 of the Amended Petition that "Defendant breached said agreement by failing to conduct the review in accordance with the Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants in the following respects: (a) Defendant failed to prepare, deliver and reconcile conflicting financial information with respect to key Plaintiff vendor(s); (b) Defendant failed to inquire as to material journal and adjusting journal entries; (c) Defendant failed to evaluate qualifications and competency of the Plaintiff's accounting staff; (d) Defendant failed to adequately supervise the engagement; (e) Defendant failed to apply adequate analytical procedures to financial statements and underlying financial data; (f) Defendant failed to develop reasonable expectations with respect to related account balances; (g) Defendant failed to evaluate and develop an adequate and accurate understanding of the Plaintiff's accounting methods and procedures; (h) Defendant failed to inquire as to the existence of illegal acts; (i) Defendant failed to gain an understanding as to intercompany transactions; (j) Defendant failed to inquire as to the existence of unrecorded liabilities," please provide the following information:

8

A. Identify the "key vendor(s)" and the "conflicting data referenced in subparagraph (a) above;

B. Identify the "material journal and adjusting journal entries" that Defendant failed to inquire about and referenced in subparagraph (b) above;

C. Identify the "accounting staff" referenced in subparagraph (c) above;

D. Identify in what respects Defendant failed to "supervise the engagement" as referenced in subparagraph (d) above;

E. Identify the "analytical procedures" that you contend should have been applied but weren't as referenced in subparagraph (e) above;

F. Identify the "related account balances" for which Defendant allegedly failed to develop "reasonable expectations" as referenced in subparagraph (f) above;

G. Identify all "illegal acts" of any CLP employee which you have learned about since 1999;

H. Identify which "intercompany transactions" you contend Defendant failed to gain an understanding of as referenced in subparagraph (i) above;

I. Identify all "unrecorded liabilities" that you contend Defendant failed to inquire about as referenced in subparagraph (j) above;

J. Identify any documents which relate to the allegations of Paragraph 9 and all of its subparts;

9

K. Identify each person who has or claims to have knowledge regarding the allegations of Paragraph 9 of the Amended Petition, and/or any of your responses to this interrogatory.

**ANSWER**:

2A. The "key vendors" were Osram Sylvania and Cooper Industries. The "conflicting data", based on discovery to date, consists of vendor invoices, original books of entry, internally generated general and adjusting journal entries and the Defendant's workpapers.

2B. Discovery is incomplete. Duplicative and recurring journal entries and adjusting journal entries, spanning multiple fiscal years, that overstated the income, understated the costs of goods sold and, thereby, overstating the net income of Plaintiff.

2C. Discovery is incomplete. The Plaintiffs are unable to identify which of the Defendant's partners, managers, supervisors and staff participated in the annual accounting engagements. The Plaintiff expects to do so upon review of the Defendant's time and billing records for each engagement and entity.

2D. Discovery is incomplete. Defendant's failure to properly plan and supervise the engagement began prior to commencement of field work. Defendant's inadequate planning and supervision continued through delivery of financial statements and extended to individual income tax preparation. The Defendant was not independent with respect to Vierling, in large part because he was a former employee of the Defendant.

Case: 4:11-cr-00238-RWS   Doc. #: 78-1   Filed: 10/28/13   Page: 11 of 15 PageID #: 457

2E. Discovery is incomplete. The Plaintiff has been unable to identify any analytical procedures in the Defendant's workpapers that have been produced to date.

2F. Discovery is incomplete. The primary general ledger accounts that were affected by Vierling's scheme included inventories, accounts payable and purchases (costs of goods sold) as these accounts are directly impacted by balancing/offsetting entries to one or more of them. These accounts were manipulated by Vierling to deflate costs of goods sold as well as accounts payable, thereby artificially enhancing gross margin (gross profit) and net income of the Plaintiff. Defendant failed to consider the inter-relationships of these critical financial accounts and the effects produced by Vierling's financial statement fraud.

2G. Discovery is incomplete. Vierling perpetrated financial statement fraud for personal gain by making erroneous entries in the Plaintiff's books and records, thereby overstating income to inflate his compensation and fringe benefits as well as to divert the Plaintiff's assets by embezzlement through excess expense reimbursement. He subsequently pled guilty to embezzlement, made partial restitution and entered into a settlement with respect to civil allegations of the Plaintiff. Timothy Hohl pled guilty to an unrelated crime of mail fraud.

2H. Discovery is incomplete. The Plaintiff is still reviewing the Defendant's workpapers to determine the extent to which, if any, fieldwork included inquiries as to intercompany transactions of the Plaintiff and its related entities as they bear on the undiscovered fraud committed by Vierling.

2I. Discovery is incomplete. Vierling understated accounts payable owed to Sylvania and Cooper on both annual and interim bases and appears to have verbally assured the

11

Defendant's employees that the unsupported and understated liabilities, in contrast with written evidence, were correct. The timing of this coincided with, or in close proximity to, Vierling's compensation reviews.

2J. The Plaintiff's books of original entry including, but not limited to, general ledger, subsidiary ledgers, general journal entries, adjusting journal entries, perpetual and physical inventory reports, key vendor invoices; the Defendant's workpapers, correspondence, time and billing records and other writings.

2K. See answer to 1B.

3. Please identify any third-party you have retained to provide any forensic analysis from 2007 to the present that relates to:

(a) any alleged embezzlement by any employee, officer or other agent of CLP;

(b) any tax audit or tax investigation undertaken by CLP or its representatives; or

(c) any alleged Kick-back scheme involving any employee of CLP.

**ANSWER:**

3(a)   Brown Smith Wallace LLC.

3(b)   Sabino & Company LLC.

3(c)   None.

4. For the time period from 2007 through the present, please identify any third-party you have retained to provide any forensic accounting analysis with respect to CLP's accounting or financial records for any of the years between 1991 and 2007.

**ANSWER:**

4. **Brown Smith Wallace LLC and Sabino & Company LLC**

The foregoing Answers to Interrogatories are true and correct to the best of my knowledge, information and belief.

_____
CITY LIGHTING PRODUCTS GROUP,
Affiant

STATE OF MISSOURI    )
                     ) SS
COUNTY OF ST. LOUIS  )

Subscribed and sworn to before me, a Notary Public, on this 31 day of January, 2013.

_____
Notary Public

My Commission Expires:

MENEES, WHITNEY, BURNET & TROG

BY: _____
James W. Whitney, Jr.,      #24073
Terry Burnet,                #24428
Gerald P. McManama, IV       #60901
Attorneys for Plaintiffs
7905 Forsyth Blvd.
Clayton, Missouri 63105
(314) 721-4141
(314) 721-6485– Fax
jwwhitney@7905forsyth.com
wtburnet@7905forsyth.com
geraldmcmanama@gmail.com

**CERTIFICATE OF SERVICE**

A copy of the foregoing was served, on this 31 day of May_____, 2012 to: Mr. Giuseppe Giardina, Attorney for Defendant, 190 Carondelet Avenue, Suite 600, St. Louis, Missouri 63105.

_____

Z:\Word\City Lighting Products\RubinBrown\Plntf Answr Def 2nd Set Rogs.DOCX

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | |
|---|---|
| THE CITY LIGHTING PRODUCTS GROUP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 11SL-CC04037 |
| vs. ) | Div. 8 |
| ) | |
| RUBINBROWN, LLP, ) | |
| ) | |
| Defendant. ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that two copies of PLAINTIFF'S ANSWER TO DEFENDNAT'S SECOND SET OF INTERROGATORIES DIRECTED TO PLAINTIFF were filed by first class mail, postage prepaid, this ____ day of _____, 2013 to:

Giuseppe Giardina
Attorney for Defendant
190 Carondelet Ave., Suite 600
St. Louis, MO 63105

Respectfully submitted:

MENEES, WHITNEY, BURNET & TROG

BY: _____
James W. Whitney, Jr.,      #24073
Terry Burnet,                #24428
Gerald P. McManama, IV       #60901
Attorneys for Plaintiffs
7905 Forsyth Blvd.
Clayton, Missouri 63105
(314) 721-4141
(314) 721-6485– Fax

1