IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | |
|---|---|
| THE CITY LIGHTING PRODUCTS GROUP, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 11SL-CC04037 ) Div. 8 |
| RUBINBROWN, LLP, | ) ) ) |
| Defendant. | ) |

**PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST SET OF
INTERROGATORIES DIRECTED TO PLAINTIFF**

Plaintiff The City Lighting Products Group ("Plaintiff"), pursuant to Rule 57.01 of the Missouri Rules of Civil Procedure, hereby answers Defendant's First Set of Interrogatories Directed to Plaintiff The City Lighting Products Group in the manner and within the time frame provided for by said Rules.

**DEFINITIONS AND INSTRUCTIONS**

1. The term **"Petition"** means Plaintiff's First Amended Petition filed in the Circuit Court of St. Louis County and any subsequent amended Petitions.

2. The term **"Plaintiff"** means Plaintiff The City Lighting Products Group, any predecessor of Plaintiff and any person acting as an employee, agent or other representative for Plaintiff.

3. The term **"CLP"** means CLP Corporation, KCLP Corporation, City Lighting Products Co., TAM, LLC, MAT Partnership, CLP of Denver, Metropolitan Lighting, LLC, or Hohl Partnership, any predecessor of CLP and any person acting as an employee, agent or other representative for CLP.

**EXHIBIT C**

4. The terms **"You" or "Your"** means Plaintiff or CLP.

5. The term **"RubinBrown"** means RubinBrown LLP.

6. The term **"person"** shall be broadly construed to mean any individual, corporation, partnership, Limited Liability Company, association, joint venture, sole proprietorship, agency, firm, board, authority, commission, or other legal or business entity.

7. The term **"document"** is used in its broadest sense and shall mean all "writings" including but not limited to the original (or a copy when the original is not available) and each non-identical copy (including those that are non-identical by reason of notations or markings) of any and all other written, printed, typed, punched, taped, filmed or graphic matter or recorded or tangible thing, of whatever description, however produced or reproduced (including computer-stored or generated data, together with instructions or programs necessary to search and retrieve such data), and shall include all attachments to and enclosures with any requested item to which they are attached or with which they are enclosed, and each draft thereof. The term "document" shall specifically include all recorded electronic communications such as electronic mail (E-mail) as well as any kind of written, printed, typed, recorded, electronically stored, or graphic matter, however produced or reproduced, whether sent or received or neither, including originals, copies and drafts and both sides thereof, pertaining in any way to the subject matter of this action, and including but not limited to: papers, books, periodicals, pamphlets, newspaper articles or clippings, publications, sheets, book entries, accounts, letters, photographs, objects, tangible things, correspondence, e-mail messages, telegrams, cables, telex messages, memoranda, notes, data, notations, work papers, communications, inter-office communications, inter-departmental communications, transcripts, minutes, memoranda, reports, and recordings or telephone or other conversations or of interviews, or of conferences, or of committee meetings or

of other meetings, affidavits, statements, summaries, opinions, reports, records, forms, studies, analyses, formulae, plans, specifications, evaluations, contracts, deeds, licenses, agreements, offers, orders, invoices, checks or check forms, drafts, vouchers, ledgers, journals, books or records of account, summaries of accounts, bills, balance sheets, income statements, questionnaires, answers to questionnaires, statistical records, desk calendars, appointment books, diaries, expense reports, schedules, catalogs, lists, indexes, tabulations, calculations, charts, graphs, maps, surveys, drawings, renderings, diagrams, photographs, recordings, films, computer programs, computer files, computer data, computer tapes, magnetic tapes and cards, punch cards, computer printouts, data processing input and output, microfilms, all other records or information kept by electronic, photographic, mechanical or other means, and things similar to any of the foregoing however denominated, whether currently in existence or already destroyed.

8. The term **"thing"** refers to any tangible object, other than a document, and includes objects of every kind and nature including, but not limited to, prototypes, models, and specimens.

9. The terms **"refer" "relate"** or **"relating"** or **"pertain"** mean, in addition to their customary and usual meaning, discuss or discussing, refer or referring, reflect or reflecting, assess or assessing, record or recording and comment or commenting.

10. The terms **"communication," "communicated"** or **"communications"** mean any transmission of letters, numbers, images, symbols, data or other information by any means, including, but not limited to, any oral, written, or electronic means.

11. The words "or," "and," "all," "every," "any," "each," "one-or-more," "including," and similar words of guidance, are intended merely as such, and should not be construed as words of limitation. The words "or" and "and" shall include each other whenever

possible to expand, not restrict, the scope of the interrogatory. The word "including" shall not be used to limit any general category or description that precedes it.

12. The word **"concerning"** means relating to, referring to, describing, evidencing or constituting.

13. For purposes of these interrogatories, terms not specifically defined shall have their ordinary meaning.

14. The singular form or masculine gender, when used herein, shall include respectively, the plural and feminine or neuter as appropriate.

15. If you claim that an interrogatory is overly broad, you shall divulge information responsive to that portion of the interrogatory that is unobjectionable and shall specifically identify the respect in which the interrogatory is allegedly overly broad.

16. If you claim that an interrogatory is unduly burdensome, you shall produce information responsive to that portion of the interrogatory that is unobjectionable and shall specifically identify the respect in which the interrogatory is allegedly unduly burdensome.

17. If an interrogatory encompasses information not in your possession, but that you know or have reason to believe exists, you shall identify such documents or things to the extent possible, indicating the circumstances of your knowledge or belief regarding the information and identifying the persons who are believed to have knowledge of the information.

## INTERROGATORIES

1. Identify each and every person who has or claims to have knowledge of any facts relating to the allegations set forth in the Petition. For each such person identified, set forth:

    a. His or her name, address, and telephone number;

    b. The name and address of his or her present employer; and

      c.    A detailed description of the relevant facts of which such person has knowledge.

**ANSWER:** LESTER HOHL, JOHN McCARTNEY, MARILYN GILLIAM, MICHAEL HOHL – all employed by City Lighting, office number 314-534-1090, such individuals are aware of the embezzlement and the manipulation of Plaintiff's financial records; JIM DONOVAN of Sabino & Company, DONNA SMITH of Brown Smith Wallace and RICH MICHALEK - all such individuals are aware of the financial manipulation of Plaintiff's financial records.

2.    Identify each and every person who has knowledge of any facts relating to any accounting, tax or financial services provided by RubinBrown to Plaintiff or CLP. For each such person, set forth:

      a.    His or her name, address, and telephone number;

      b.    The name and address of his or her present employer; and

      c.    A detailed description of the relevant facts of which such person has knowledge.

**ANSWER:** See answer to Number 1.

3.    State whether You, or anyone else on Your behalf, is aware of any written or recorded statement made by any present or former RubinBrown representative, including but not limited to, any agent, employee, officer or other representative relating to any accounting, tax or financial services provided by RubinBrown to Plaintiff or CLP. Please provide the following information regarding each such statement:

      a.    Identify the person making the statement;

  b.  State the date and place of the statement;

  c.  Identify each person who received and/or heard the statement;

  d.  Describe specifically the contents of the statement; and

  e.  Identify and produce each and every document referring or relating to the statement.

**ANSWER:** **a. JOHN VITALE. b. See Affidavit of JOHN VITALE filed in Court. c. Not applicable. d. See Affidavit of JOHN VITALE filed in Court. e. Affidavit of JOHN VITALE previously produced.**

4. Identify each person whom You expect to call as an expert witness at trial. For each such person, set forth:

  a.  His or her name, address, and telephone number;

  b.  An explanation of the subject matter on which he or she is expected to testify;

  c.  The substance of the facts and opinions, as well as the basis for each opinion, to which such expert is expected to testify;

  d.  The educational background, training, and experience which qualified him or her as an expert;

  e.  The field(s) of such expertise;

  f.  Identify and produce the documents provided to the expert by any representative of Plaintiff.

**ANSWER:** **To be determined.**

6. Identify each corporate officer of Plaintiff for each year during the period from 1991 through the present. With respect to each such person identified, please provide the following information:

  a.  The title of each such person;

    b.    The dates of each such person's tenure with Plaintiff;

    c.    State in detail the job description of each such person identified and describe in detail how each such person's responsibilities and duties changed during the period 1991 through the present;

    d.    Identify any corporate records that refer, relate or pertain to any job description for any of the persons identified in response to this Interrogatory; and

**ANSWER:** **See documents produced by Plaintiff in response to Defendant's Request to Produce.**

7.    Identify each corporate officer of CLP for each year during the period from 1991 through the present. With respect to each such person identified, please provide the following information:

    e.    The title of each such person;

    f.    The dates of each such person's tenure with CLP;

    g.    State in detail the job description of each such person identified and describe in detail how each such person's responsibilities and duties changed during the period 1991 through the present;

    h.    Identify any corporate records that refer, relate or pertain to any job description for any of the persons identified in response to this Interrogatory;

**ANSWER:** **See documents produced by Plaintiff in response to Defendant's Request to Produce.**

9.    State specifically what safeguards or internal controls Plaintiff or CLP has employed and currently employs relating to any employee, manager, or owner writing, signing and/or issuing checks drawn on Plaintiff's or CLP's checking account(s) or otherwise

withdrawing funds from Plaintiff's or CLP's checking account(s), or executing agreements or contracts on behalf of Plaintiff or CLP.

**ANSWER:** **Prior to discovery of embezzlement no procedures. Since discovery, more division of responsibilities. Plaintiff has instituted a policy and procedurals manual. All contracts are reviewed by Plaintiff's Counsel and must be approved by LESTER HOHL.**

10. Identify each insurance policy carried by Plaintiff or CLP during the years 1991-2006 that covers claims of employee dishonesty, fraud, embezzlement, or theft against Plaintiff or CLP. With respect to each such policy, please:

    a. Identify the name of the insurer;

    b. Identify the policy number;

    c. Identify any and all policies against which Plaintiff or CLP made a claim relating to any act or omission of any employee of Plaintiff or CLP, including Timothy Hohl or Stephen Vierling;

    d. State the total amount of money that Plaintiff or CLP sought to recover under each such policy relating to any act or omission of any employee of Plaintiff or CLP, including Timothy Hohl or Stephen Vierling;

    e. State the total amount of money that Plaintiff or CLP recovered under each policy relating to any act or omission of any employee of Plaintiff or CLP, including Timothy Hohl or Stephen Vierling;

    f. State the date on which such payment was made to Plaintiff or CLP by an insurer relating to any act or omission of any employee of Plaintiff or CLP, including Timothy Hohl or Stephen Vierling;

    g. Identify by name, last known address, and telephone number, each person to have had some involvement and/or responsibility in connection with any such claim made by Plaintiff or CLP relating to any act or omission of any employee of Plaintiff or CLP, including Timothy Hohl or Stephen Vierling;

    h.    Identify and produce any documents given by Plaintiff or CLP, or anyone acting on Your behalf, to any insurer relating to any act or omission of Timothy Hohl or Stephen Vierling, including any documents or communications that relate to any claim made by Plaintiff or CLP with respect to any employee of Plaintiff or CLP, including Timothy Hohl or Stephen Vierling;

    i.    Identify any communications or documents between CLP on the one hand and any insurer on the other that relates to any claim made by Plaintiff or CLP with respect to any employee of Plaintiff or CLP, including Timothy Hohl or Stephen Vierling ;

    j.    Identify and produce any documents given to Plaintiff or CLP, or anyone acting on Your behalf, by any such insurer, or anyone acting on the insurer's behalf, relating to any act or omission of any employee of Plaintiff or CLP, including Timothy Hohl or Stephen Vierling; and

    k.    Identify and produce any and all documents which reflect or relate to Your responses to the above subparts.

**ANSWER:** **HARTFORD INSURANCE COMPANY paid Plaintiff the policy limits of $150,000.00, and CNA INSURANCE COMPANY paid Plaintiff the policy limits of $25,000.00. There were no losses attributable to TIMOTHY HOHL and consequently no claims were made against HARTFORD or CNA.**

11.    Identify:

    a.    Each and every person that granted Timothy Hohl or Stephen Vierling authority to write, sign and/or issue checks drawn on Plaintiff's or CLP's checking account(s) or otherwise withdraw funds from Plaintiff's or CLP's checking account(s), or execute agreements or contracts on behalf of Plaintiff or CLP; and

    b.    Each and every person that had the authority to supervise and/or oversee Timothy Hohl's or Stephen Vierling's actions in their duties as employees of Plaintiff or CLP.

**ANSWER:** **LESTER HOHL**

12. Identify any and all lawsuits filed by Plaintiff or CLP relating to any act or omission of any employee of Plaintiff or CLP, including Timothy Hohl or Stephen Vierling, relating to any claim of dishonesty, fraud, embezzlement, or theft, including against Plaintiff or CLP. Specifically, please identify:

    a. The caption of each lawsuit;

    b. The case number of each lawsuit;

    c. The court in which the lawsuit was filed, including any court to which the case was subsequently transferred and/or removed;

    d. The resolution or procedural posture of each such lawsuit; and

    e. Plaintiff's or CLP's stated theory of recovery in each such lawsuit.

**ANSWER:** **CITY LIGHTING PRODUCTS vs. STEPHEN VIERLING, St. Louis County Circuit Court Cause# 11SL-CC04345.**

14. Identify any and all funds ever recovered, including any funds currently due and owing, by Plaintiff or CLP from Timothy Hohl or Stephen Vierling.

**ANSWER:** **Plaintiff recovered $188,000.00 from STEPHEN VIERLING in CITY LIGHTING PRODUCTS vs. STEPHEN VIERLING, $117,323.69 in U.S. vs. VIERLING, $150,000.00 from HARTFORD INSURANCE and $25,000.00 from CNA for Vierling theft. No funds were ever recovered from TIM HOHL because he was not involved in any employee thefts.**

15. Identify any review, audit and/or analysis of Plaintiff's financial and/or accounting records by any person and/or entity from 1991 through the present. Specifically, please provide the following information:

    a. Identify the name and address of any person with knowledge of any such review, audit or analysis;

    b. State in detail what the purpose was of any such audit and or analysis;

    c. Identify and state with specificity, the findings or conclusions of any such review, audit or analysis;

    d. Identify any contacts or communications between any representative of Plaintiff and any other person concerning any such review, audit or analysis; and

    e. Identify and produce any documents, records or communications that relate to any such review, audit or analysis.

**ANSWER: a. Defendant RUBINBROWN, LLP; BROWN SMITH WALLACE; SABINO COMPANY; and RICH MICHALEK. Any such documents will be produced subject to a protective order. b. In response to the IRS tax inquiry. c. Vierling overstated CLP's income, and as a result, obtained salary increases, bonuses and profit sharing contributions that he would not otherwise have received if the accounting records had been properly maintained and reviewed by RubinBrown. Also see Plaintiff's Answers to Second Set of Interrogatories. d. No written communications. e. Any such documents will be produced in response to Defendant's Request to Produce.**

16. Identify any review, audit and/or analysis of CLP's financial and/or accounting records by any person and/or entity from 1991 through the present. Specifically, please provide the following information:

   a. Identify the name and address of any person with knowledge of any such review, audit or analysis;
   b. State in detail what the purpose was of any such audit and or analysis;
   c. Identify and state with specificity, the findings or conclusions of any such review, audit or analysis;
   d. Identify any contacts or communications between any representative of Plaintiff and any other person concerning any such review, audit or analysis; and
   e. Identify and produce any documents, records or communications that relate to any such review, audit or analysis.

   **ANSWER:** See answer to Number 15.

17. Identify who was responsible for retaining RubinBrown and for overseeing its work in each year between 1991 through 2006.

   **ANSWER: LESTER HOHL.**

18. Identify who was responsible for hiring Timothy Hohl and identify all background and reference checks performed by Plaintiff or CLP prior to hiring Timothy Hohl and produce a copy of same.

   **ANSWER: LESTER HOHL.**

19. Identify all employees of CLP whom you have identified as being involved in the generation or transmittal of fraudulently inflated invoices referenced in the indictments of Jeffrey

M. Biffar, James P. Shields and Timothy K. Bode, or the Information of Timothy Hohl. With respect to each such person identified, please provide the following information:

    a. State whether they are still employed by CLP;

    b. State the role each such person had with respect to the generation or transmittal of any fraudulent invoice or other document;

    c. State whether each such person provided testimony to the grand jury in connection with the prosecution of Messrs. Biffar, Shields or Bode;

    d. Identify any such fraudulent documentation generated or transmitted by each such person;

**ANSWER: TIMOTHY HOHL.**

20. State all facts which support the contention that RubinBrown breached any agreement between RubinBrown and Plaintiff or CLP to provide any professional service to Plaintiff or CLP, as stated in Paragraphs 8 through 9 of the Petition. With respect to this allegation, please provide the following information:

    a. Identify any and all facts that support this allegation;

    b. Identify each and every person who has or claims to have knowledge regarding this allegation; and

    c. Identify any and all documents that refer, relate or pertain to this allegation.

**ANSWER: See Plaintiff's answers to Defendant's Second Set of Interrogatories.**

21. State all facts which support the contention that RubinBrown negligently or carelessly performed any professional service to Plaintiff or CLP, as stated in Paragraph 13 of the Petition. With respect to this allegation, please provide the following information:

    a. Identify any and all facts that support this allegation;

  b. Identify each and every person who has or claims to have knowledge regarding this allegation; and

  c. Identify any and all documents that refer, relate or pertain to this allegation.

**ANSWER:** See answer to Number 20.

22. State all facts which support the contention that RubinBrown was a fiduciary of Plaintiff or CLP, as stated in Paragraph 16 of the Petition. With respect to this allegation, please provide the following information:

  a. Identify any and all facts that support this allegation;

  b. Identify each and every person who has or claims to have knowledge regarding this allegation; and

  c. Identify any and all documents that refer, relate or pertain to this allegation.

**ANSWER:** See answer to Number 20.

23. State all facts which support the contention that RubinBrown breached any duty of loyalty, fidelity, honesty and good faith to Plaintiff or CLP, as stated in Paragraph 18 of the Petition. With respect to this allegation, please provide the following information:

  a. Identify any and all facts that support this allegation;

  b. Identify each and every person who has or claims to have knowledge regarding this allegation; and

  c. Identify any and all documents that refer, relate or pertain to this allegation.

**ANSWER:** See answer to Number 20.

24. Identify any employee or customer of Plaintiff or CLP who was convicted of, or pled guilty to, a crime during the time period 1997-2007 with respect to any harm caused to Plaintiff or CLP. With respect to any such person, please provide the following information:

   a. State the date of any such conviction and identify the court in which such conviction or plea was entered;

   b. Identify the criminal statute that each was person was convicted of or pled guilty to, and the date of any indictment or information filed in connection with each such person;

   c. State the name of any person who provided Grand Jury testimony in connection with the prosecution of any such person;

   d. Identify any documents which relate to any such criminal prosecution, including and documents produced by Plaintiff or CLP to the Federal Government in response to any subpoena – or any documents provided to any such person by the Federal Government in connection with any such prosecution, including any transcript of any testimony or court proceeding;

   e. Identify any person who provided documents to the Government in connection with the prosecution of any such person;

   f. Identify any document which relates to any such criminal proceeding.

**ANSWER:   STEPHEN VIERLING**

25. State in detail the manner in which you calculate your damages. In particular, identify any and all components of your damages and identify all documents relating to Plaintiff's alleged damages, as referenced in Paragraph 28 of the Petition.

**ANSWER:   Plaintiff is in the process of reviewing documents produced by Defendant and documents to be produced by other parties subject to subpoenas issued in this matter which may cause Plaintiff to amend, add to or delete or otherwise revise the figures set forth below or to add additional classes or categories of damages alleged herein.**

Legal fees in connection with IRS audit:

1. Harlan -   $320,094.00  (80% of $400,118.00)

2. Short -    $42,484.00

3. Haar -    $146,472.00  (80% of $183,091.00)

4. Martin -   $32,831.00  (20% of $114,155.00)

                                                     Total: $541,881.00

Accounting fees in connection with IRS Audit:

1. Brown, Smith, Wallace -    $82,432.15

2. Sabino & Co. -    $440,538.00

3. Rich Michalek -    $178,080.00

                                                   Total: $701,050.15

Accounting fees charged by RubinBrown, LLP from 2002 thru 2007:

                                                 $357,199.00

Additional costs of line of credit after 2007:

                                                 $272,000.00

Additional Costs of line of credit 2002 – 2007:

                                               $200,000.00

Knoll -                                                    $6,469.00

IKON -                                                    $9,901.00

Melman Alton -                                       $3,950.00

                                      Grand Total: $2,092,450.15

The foregoing Answers to Interrogatories are true and correct to the best of my knowledge, information and belief.

_____
CITY LIGHTING PRODUCTS GROUP,
Affiant

STATE OF MISSOURI     )
                      ) SS
COUNTY OF ST. LOUIS   )

Subscribed and sworn to before me, a Notary Public, on this 8th day of JANUARY, 2013.

_____
Notary Public

My Commission Expires: 10-24-15

MENEES, WHITNEY, BURNET & TROG

BY: _____
James W. Whitney, Jr.,      #24073
Terry Burnet,               #24428
Gerald P. McManama, IV      #60901
Attorneys for Plaintiffs
7905 Forsyth Blvd.
Clayton, Missouri 63105
(314) 721-4141
(314) 721-6485 – Fax
jwwhitney@7905forsyth.com
wtburnet@7905forsyth.com
geraldmcmanama@gmail.com

**CERTIFICATE OF SERVICE**

A copy of the foregoing was served, on this ___ day of _____, 20__ to: Mr. Giuseppe Giordano, Attorney for Defendant, 190 Carondelet Avenue, Suite 600, St. Louis, Missouri 63105.

_____
Terry Burnet

Z:\Word\City Lighting Products\RubinBrown\Plntf Answr Def 1st Intrr with Questions.DOC

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | |
|---|---|
| THE CITY LIGHTING PRODUCTS GROUP, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 11SL-CC04037 ) Div. 8 ) |
| RUBINBROWN, LLP, | ) ) ) |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that two copies of PLAINTIFF'S RESPONSE TO DEFEDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO PLAINTIFF and PLAINTIFF'S ANSWER TO DEFENDNAT'S FIRST SET INTERROGATORIES DIRECTED TO PLAINTIFF were filed by first class mail, postage prepaid, this _____ day of January, 2013 to:

Giuseppe Giardina
Attorney for Defendant
190 Carondelet Ave., Suite 600
St. Louis, MO 63105

Respectfully submitted:

MENEES, WHITNEY, BURNET & TROG

BY: _____
James W. Whitney, Jr., #24073
Terry Burnet, #24428
Gerald P. McManama, IV #60901
Attorneys for Plaintiffs
7905 Forsyth Blvd.
Clayton, Missouri 63105
(314) 721-4141
(314) 721-6485– Fax

1